CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED Danville
SEP 24 2013
JULIA C DUDLEY, CLERK
BY: DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | | |
|---|---|---|
| SHARON L. BAKER, | ) | CASE NO. 4:12CV00039 |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | REPORT AND RECOMMENDATION |
| | ) | |
| CAROLYN W. COLVIN,[1] | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | By: B. Waugh Crigler |
| Defendant. | ) | U. S. Magistrate Judge |

This challenge to a final decision of the Commissioner which denied plaintiff's November 16, 2009[2] protectively-filed applications for a period of disability and disability insurance benefits and supplemental security income under the Social Security Act ("Act"), as amended, 42 U.S.C. §§ 416, 423, and § 1381, et seq., is before this court under authority of 28 U.S.C. § 636(b)(1)(B) to render to the presiding District Judge a report setting forth appropriate findings, conclusions, and recommendations for the disposition of the case. The questions presented are whether the Commissioner's final decision is supported by substantial evidence, or whether there is good cause to remand for further proceedings. 42 U.S.C. § 405(g). For the reasons that follow, the undersigned will RECOMMEND that an Order enter GRANTING the plaintiff's motion for summary judgment, in part, DENYING the Commissioner's motion for summary judgment, and REMANDING this case to the Commissioner for further proceedings.

In a decision dated February 25, 2011, an Administrative Law Judge ("Law Judge") found that plaintiff had not engaged in substantial gainful activity since December 23, 2007, her

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. (Dkt. No. 16.) Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin hereby is substituted for Michael J. Astrue as the defendant in this action.

[2] Plaintiff previously filed applications on February 14, 2008 and April 4, 2009. (R. 11, 157-159.) These applications were denied, and plaintiff took no further action. (R. 11, 169-177.)

alleged disability onset date.³ ⁴ (R. 14.) The Law Judge determined plaintiff's fibromyalgia, obesity with sleep apnea, memory loss, and degenerative disc disease were severe impairments.⁵ (R. 14.) He determined that plaintiff's affective disorder, anxiety-related disorder, right foot residuals of surgery, right shoulder residuals of rotator cuff repair/tendonitis, knee problems, and cardiac problems were singly and in combination not severe impairments. (R. 14-23.) He also concluded that, through the date of the hearing, plaintiff did not suffer an impairment or combination of impairments which met or equaled a listed impairment. (R. 23-24.) Further, the Law Judge found that plaintiff possessed the residual functional capacity ("RFC") to perform a range of sedentary work, with only occasional lifting overhead with her right upper extremity and limited to simple, routine tasks. (R. 25.)

In support of his decision, the Law Judge relied on portions of the testimony of Gerald K. Wells, Ph.D., an impartial vocational expert ("VE"), which were in response to questions premised on the Law Judge's RFC finding. (R. 28-30, 55-59.) Based on this testimony and his determination of plaintiff's RFC, the Law Judge found that plaintiff was unable to perform any

---

³ Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment or combination of impairments that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A) (2004). Substantial gainful activity is "work activity that involves doing significant physical or mental activities," and it is typically determined by the amount of a claimant's earnings. See 20 C.F.R. §§ 404.1572 and 1574. The sequential evaluation is a five step process used by the Commissioner to evaluate whether a claimant is disabled. See 20 C.F.R. § 404.1520(a)(4). If a claimant is found not disabled at any level prior to the final level, the inquiry is to stop. Id. In order to qualify for a period of disability and disability insurance benefits, plaintiff must establish that she became disabled prior to the expiration of her insured status, which is September 30, 2011. See 20 C.F.R. § 404.131(a); (R. 14, 209.)

⁴ However, the Law Judge ruled that the determinations of plaintiff's prior applications were *res judicata* for the period through the date of the prior denials on April 6, 2009 (SSI) and June 23, 2009 (DIB). (R. 11.)

⁵ A severe impairment is any impairment or combination of impairments which significantly limits a claimant's physical or mental ability to do basic work activities. See 20 C.F.R. § 404.1520(c).

of her past relevant work. (R. 28.) Furthermore, he found that there were other jobs in significant numbers in the local and national economy which plaintiff could perform, including as an appointment clerk, order clerk, and security monitor. (R. 29.) Accordingly, the Law Judge concluded that plaintiff was not disabled. (R. 29-30.)

Plaintiff appealed the Law Judge's February 25, 2011 decision to the Appeals Council. (R. 1-6, 316-320.) In its July 10, 2012 notice, the Council found no basis to review the Law Judge's decision, denied review, and adopted the Law Judge's decision as the final decision of the Commissioner. (R. 1-3.) This action ensued, briefs were filed, and oral argument was held by telephone before the undersigned on August 28, 2013.

The Commissioner is charged with evaluating the medical evidence and assessing symptoms, signs, and medical findings to determine the functional capacity of the claimant. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *Shively v. Heckler*, 739 F.2d 987 (4th Cir. 1984). The regulations grant some latitude to the Commissioner in resolving conflicts or inconsistencies in the evidence, which the court is to review for clear error or lack of substantial evidentiary support. *Craig v. Chater*, 76 F.3d 585, 589-590 (4th Cir. 1996). In all, if the Commissioner's resolution of the conflicts in the evidence is supported by substantial evidence, the court is to affirm the Commissioner's final decision. *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). Substantial evidence is defined as evidence, "which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than preponderance." *Id.* at 642. When the Appeals Council considers additional evidence offered for the first time on administrative appeal and denies review, courts must consider the record as a whole, including the new evidence, in determining

whether the Commissioner's final decision is supported by substantial evidence. *Meyers v. Astrue*, 662 F.3d 700, 707 (4th Cir. 2011); *Wilkins v. Secretary*, 953 F.2d 93, 96 (4th Cir. 1991).

Plaintiff challenges the final decision of the Commissioner on several grounds. First, she argues that the Law Judge erred by finding several of her alleged impairments to be non-severe. (Dkt. No. 20, at 9-10.) Specifically, she asserts that the combination of her shoulder impairments, including the effects resulting from a rotator cuff repair and tendonitis of the shoulder, together with pain in her knees and feet should have been considered severe impairments. *Id.* Second, she contends that her impairments meet and/or medically equal the requirements of §1.02 of the Listings, for right shoulder pain, and §14.09, for recurrent arthritis. (Dkt. No. 20, at 10-12.) Finally, plaintiff argues that the Law Judge's RFC determination is not supported by substantial evidence, thus affecting the relevance the VE's testimony concerning plaintiff's ability to work. (Dkt. No. 20, at 13-15.) The undersigned will consider these arguments below.

At the outset, the undersigned acknowledges that this is a very close case. First, the Law Judge determined that a large portion of the record addressed a period that was barred by *res judicata* as a result plaintiff's failure to appeal prior denials of her claims for benefits. (R. 11.) Plaintiff's last prior applications were filed on April 4, 2009, alleging an onset of December 23, 2007, which is the same date alleged in this case. (R. 11, 157.) These applications for a period of disability and disability insurance benefits and supplemental social security income were denied on June 23, 2009 and April 6, 2009, respectively. (R. 11, 169-177.) Plaintiff did not appeal either of these decisions. (R. 11.) Apparently, plaintiff also did not appeal an earlier denial of benefits on February 14, 2008. (R. 11.)

*Res judicata* can bar any subsequent claim on the basis that the same claim has earlier been denied on the merits by a final administrative decision, which can occur at any level of the adjudicative process. *See McGowen v. Harris,* 666 F.2d 60, 65-66 (4th Cir. 1981). Where *res judicata* applies, the court is without jurisdiction under 42 U.S.C. 405(g) to review the denial of benefits based on the Commissioner's application of the doctrine. *Id.* However, if the Commissioner reopens the claim to any extent, then the court may address the merits of the Commissioner's action. *Id.*

There is no question that the same period and the same alleged impairments addressed in the April 4, 2009 and November 16, 2009 applications are claimed here, and denial of those claims became final when plaintiff did not appeal. (R. 169-177; 217.) There also is no question that the Law Judge reviewed all the evidence of record, dating as far back as March 2006. (R. 14-23.) However, reviewing evidence relating to the time period of an earlier application, in itself, does not constitute a constructive reopening, because the Law Judge is permitted to examine earlier evidence to determine whether there is a basis to reopen the claim. *See McGowen v. Harris,* 666 F.2d 60, 67 (4th Cir. 1981); *Halsey v. Colvin,* No. 1:12cv0037, 2013 WL 4759088 (W.D.Va. Sept. 4, 2013). Moreover, plaintiff does not challenge the Commissioner's application of *res judicata*. Accordingly, this court lacks subject-matter jurisdiction to consider evidence from prior to the denial of plaintiff's April 4, 2009 applications, as such review is barred by *res judicata*.[6]

Turning to the merits the court can address, plaintiff first argues that the Law Judge's severity findings are not supported by substantial evidence. This question is difficult because

---

[6] The Law Judge does refer to a prior State agency medical consultant opinion in his summary of the relevant opinion evidence. (R. 27-28.) However, his questioning of the VE was based on current opinions, as was the primary basis of his RFC determination. (R. 27-28, 55-59.)

5

plaintiff's treatment record since 2009 is very spotty and not particularly detailed. She certainly has had a long history of shoulder ailments, including two surgeries before the relevant period, but much of her current treatment essentially has been chronic pain management. (R. 457.) In February 2009, plaintiff revealed to Scott M. McGinley, M.D. that her right shoulder was bothering her again and requested another injection for the pain. (R. 457.) Dr. McGinley noted that plaintiff's last shoulder surgery had been three years before, that there was scar tissue present, that plaintiff was a "pain management patient at this point," and that she had not received an injection in her right shoulder since the summer of 2008. (R. 457.) He found that plaintiff's shoulder actually moved "pretty well," indicating that she could reach overhead to 130 degrees and that her scars were clean, dry, healed, and non-tender. *Id.* However, he also noted that plaintiff was a "little sore" with external rotation and had pain with abduction and external rotation. *Id.* Though implied, it is not clear whether plaintiff received an injection on this date.

In April 2009, plaintiff was referred to Maurice H. Bell, M.D. for evaluation and management of neck pain. (R. 430.) Plaintiff claimed that she was having pain in her neck that was radiating down into both shoulders and tingling down her right arm and also that she felt her grip had been weak bilaterally. *Id.* Dr. Bell noted that plaintiff's right shoulder was worse than the left but pointed out that prior surgeries on her right shoulder confused the issue. *Id.* Physical examination produced no significant findings, and Dr. Bell observed that plaintiff "moved her neck pretty well in all modalities without a lot of symptoms," had good strength with no diminution on either side, and was negative for deficits as well. *Id.* Plaintiff was given a cervical epidural steroid injection and scheduled to return in a month. *Id.*

Plaintiff consistently was diagnosed as suffering fibromyalgia, osteoarthritis, and chronic back pain (R. 493-496), and received an x-ray because of right upper abdominal pain. (R. 449.)

However, there is no evidence in the record that plaintiff complained of right shoulder pain or had any observed limitations in range of motion or use of her shoulders between April 2009 and February 2010. In February 2010, Dr. McGinley revealed that plaintiff had not received an injection in her shoulder since 2008 and opined that her knees were her "main issue." (R. 453.) On physical examination, he found that plaintiff's right shoulder could move to 90 degrees with pain, that her left shoulder could move to 120 degrees without pain, that her elbow also moves well from 0 to 120 degrees, with full fist formation, and that she was grossly neuro-vascularly intact. *Id.* He gave her a right shoulder injection, told her that she could receive one every 90 days as needed, and pointed out that she needed a rheumatology referral because of multiple areas of arthritis and joint pain. *Id.*

Despite being instructed that she could return to receive another injection in 90 days, plaintiff did not return to Dr. McGinley again, at least through December 2010. Moreover, while plaintiff was diagnosed with fibromyalgia and osteoarthritis thereafter (R. 491, 492, 542) and complained of cervical spine pain in her July 2010 psychological evaluation (R. 545), she did not seek further treatment for her shoulder during the relevant period. Also, physical examinations performed in March and April 2010 noted no complaints of back or extremity pain, normal range of motion, no swelling, deformities, or tenderness; and revealed normal findings other than complaints of some weakness and mild distress. (R. 477-478, 487-488.)

Accordingly, while plaintiff remains under pain management for treatment of her chronic shoulder impairment, her very limited treatment history during the relevant period, rare need for shoulder injections, lack of complaints of shoulder pain, limited evidence of limitations, and several normal physical examinations all substantially support a finding that her impairment does not significantly limit her ability to do basic work activities. See 20 C.F.R. § 404.1520(c).

7

Furthermore, even if the Law Judge erred by finding the impairment non-severe, he clearly considered all evidence related to the impairment at Steps 2 and 3 of the sequential evaluation and in his determination of plaintiff's residual functional capacity. (R. 13-28.) He incorporated limitations related to her shoulder into the RFC and limited her to sedentary work and occasional overhead lifting with her right upper extremity. (R. 24.) The Law Judge, therefore, did not err in his analysis of plaintiff's shoulder impairment, at least at Step 2 of the sequential analysis. *See Brooks v. Astrue*, 5:10cv00104, 2012 WL 1022309, at *11 (W.D.Va. Mar. 26, 2012) (any error at Step 2 is harmless if the Law Judge considers the effects of all of a claimant's impairments in the subsequent steps, including when assessing a claimant's RFC).

As for her alleged knee and foot impairments, plaintiff also received regular pain management treatment during the relevant period. In February 2009, plaintiff complained to Dr. McGinley that her knees were bothering her "quite a bit," with grinding and pain, particularly when she would squat. (R. 457.) An x-ray revealed no bone on bone changes, factures, or radiolucencies, but Dr. McGinley palpated crepitus in both knees under the patellofemoral joint, with 0 to 90 degree movement in her left and to 85 degrees in her right. *Id.* He diagnosed plaintiff with chondromalacia bilateral patella, left worse than right, and he suggested injections, oils, anti-inflammatories, and weight loss, along with a referral to a pain management doctor to treat her condition. *Id.*

In March, Dr. McGinley noted that plaintiff was using a cane and continued to have knee pain, mostly in her right knee. (R. 455.) Her reported a range of motion from 0 to 90 degrees, with tenderness over the medial joint MCL with some crepitus, but no instability, and he gave plaintiff a knee injection for pain and scheduled a progress checkup in three months. *Id.* Plaintiff was diagnosed with osteoarthritis and fibromyalgia in April, May, and August 2009, but

physical examinations revealed no abnormal findings, she made no specific complaints of knee or foot pain, and, in August, it was noted that she was doing "fairly well." (R. 494-496.) In October, plaintiff complained of leg pain, worsening fibromyalgia, and creaking and grinding in her knees. (R. 493.) Dr. Aaron observed crepitations in both of plaintiff's knees and adjusted her medications for fibromyalgia and chronic pain. *Id.*

In February 2010, Dr. McGinley indicated that plaintiff was still using a cane and suffering pain in her knees, especially on steps, with locking and grinding. (R. 453.) Physical examination revealed that neither of plaintiff knees moved very well, with movement to 80 degrees and grinding both heard and felt. *Id.* Plaintiff received oil injections along with additional hyaluronic acid injections in March, after which Dr. McGinley again opined that plaintiff needed a rheumatology referral for multiple areas of arthritis and join pain. (R. 453, 502, 504.) At the time of these additional injections, plaintiff was described as "doing well" with no complaints, with her knees "looking good" and feeling "fine," and range of motion from 0 to 80 or 90 degrees." *Id.* Emergency room visits in March and April 2010 noted no complaints of pain, full range of motion in her extremities without tenderness or edema, and normal nerve function. (R. 477-478, 487-488.) However, according to a report from Dr. Aaron in April 2010, she again diagnosed plaintiff with fibromyalgia and osteoarthritis of the knees, noted right foot swelling for four weeks, and considered prescribing her oral pain medication. (R. 492.)

A follow up with Dr. Aaron in June 2010 revealed that plaintiff's fibromyalgia had improved, that she had lost a fair amount of weight, that she had no acute joint problems, and no abnormal symptoms or physical findings were noted. (R. 491.) However, plaintiff's follow up with Dr. McGinley in July 2010 revealed pain in both knees, problems going up or down stairs, use of a cane, and that the oil injections did not help much other than reducing grinding. (R.

9

501.) Plaintiff's range of motion was 0 to 80 or 85 degrees in her right knee and 0 to 90 degrees in her left knee, with crepitus and pain with flexion in both. *Id.* Dr. McGinley gave plaintiff another "one and one" injection in her knees for her arthritis and scheduled plaintiff to return in three months. *Id.* Plaintiff also complained of bilateral knee pain in her July psychological evaluation, claiming that she was a candidate for bilateral total knee replacement. (R. 545.) Finally, in her October 2010 follow up with Dr. McGinley, plaintiff claimed that while the knee injections helped some, she continued to have problems with stairs and popping and catching in her knees and was still using a cane. (R. 543.) Her range of motion was from 0 to 75 and slow in her right knee and from 0 to 90 in her left knee, with no instability in either. (R. 543.) Plaintiff was again noted to be in pain management and had still not gone to see a rheumatologist. *Id.* She was given "one and one" injections in both knees, set to be seen again in three months, and treatment by water therapy, weight loss, and medications was discussed. *Id.*

The undersigned is persuaded that the Law Judge's finding that plaintiff's knee impairment is not severe is not supported by substantial evidence.[7] Plaintiff has complained of knee problems related to osteoarthritis throughout the relevant period and indicated that her treatment provided only mild relief. She frequently used a cane, though it is not clear whether it

---

[7] The undersigned also has some concerns about the Law Judge's findings regarding plaintiff's mental health. Though he indentified plaintiff's memory loss as a severe impairment, the Law Judge found plaintiff's anxiety disorder and affective disorder to be non-severe. (R. 14 .) He determined plaintiff suffered only mild limitations as a result of these conditions and had no episodes of decompensation, citing the findings of the State agency medical experts. (R. 14.) However, examining clinical psychologist John Heil, DA, while acknowledging that plaintiff had no history of psychological treatment, opined that plaintiff's Global Assessment of functioning was 45, which indicates that plaintiff suffered serious symptoms or a serious impairment in social, occupational, or school functioning. (R. 545.); *See* Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 32–34 (4th ed. 2000). The Law Judge discussed Mr. Heil's findings, but he entirely left out the GAF score. (R. 14, 22.) Moreover, plaintiff's testimony and the several treatment records refer to her difficulties managing her mental status. (R. 43-46, 493-496.) While not squarely raised on judicial review, these matters should be addressed on remand.

was prescribed, and the record shows her knee impairment limits her functional abilities, including her ability to stand and climb stairs. Though her condition improved in March and April of 2010 with injections, Dr. McGinley's June 2010 report shows that this improvement was short-lived. Accordingly, the undersigned does not find substantial evidence to support the Law Judge's finding that plaintiff's knee impairment is non-severe.

However, any error at Step 2 would be harmless if the Law Judge considered all the effects of plaintiff's impairments subsequent steps, including when he assessed her RFC. *See Brooks v. Astrue*, 5:10cv00104, 2012 WL 1022309, at *11 (W.D.Va. March 26, 2012). Here, the Law Judge considered evidence of plaintiff's knee impairments and osteoarthritis throughout the sequential evaluation and limited plaintiff to sedentary work. (R. 14-23, 24-28.) The adequacy of the Law Judge's RFC determination will be addressed below, but the undersigned declines to remand on this basis.

Plaintiff also argues that she meets the requirements of Listings §1.02,[8] for right shoulder pain, and §14.09,[9] for recurrent arthritis. Plaintiff contends that her shoulder impairment

---

[8] "Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With: **A.** Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b; or **B.** Involvement of one major peripheral joint in each upper extremity (i.e., shoulder, elbow, or wrist-hand), resulting in inability to perform fine and gross movements effectively, as defined in 1.00B2c." *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.02.

[9] "**A.** Persistent inflammation or persistent deformity of: 1. One or more major peripheral weight-bearing joints resulting in the inability to ambulate effectively (as defined in 14.00C6); or 2. One or more major peripheral joints in each upper extremity resulting in the inability to perform fine and gross movements effectively (as defined in 14.00C7). Or **B.** Inflammation or deformity in one or more major peripheral joints with: 1. Involvement of two or more organs/body systems with one of the organs/body systems involved at least to a moderate level of severity; and 2. At least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss). Or **C.** Ankylosing spondylitis or other spondyloarthropathies, with: 1. Ankylosis (fixation) of the dorsolumbar or cervical spine as

11

interferes with her ability to perform fine and gross movements effectively, as revealed by Dr. Aaron's opinion. (Dkt. No. 20, at 10-12.) She also believes that several treatment records reveal that her arthritis causes pain in her knees, wrists, and several other parts of her body which inhibit her ability to ambulate or perform fine and gross movements effectively. *Id.* at 11-12.

Simply put, plaintiff has received little treatment for her shoulder impairment during the relevant period and substantial objective evidence fails to demonstrate that plaintiff has suffered an extreme loss of function in both upper extremities. Plaintiff did not claim in her function reports that she was unable to manage her own personal care or prepare small meals as a result of her shoulder limitations. (R. 199-206, 262-269.); *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 1.00B2c, 14.00C7. Though plaintiff uses a cane, there is no indication that she needs a walker, crutches, or two canes to ambulate, and she testified that she was able to shop and go about other activities outside the home with the aid of her cane. (R. 199-206, 262-269.); *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 1.00B2b, 14.00C6. Furthermore, while plaintiff suffers degenerative arthritis in her hand and wrist, physical examination findings were largely normal, other than tenderness and some discomfort, and her treating source opined that the condition would resolve itself overtime with the aid of conservative treatment. (R. 542.) There is no other evidence in the record from the relevant period that plaintiff suffers difficulties with manipulative activities. Accordingly, the Law Judge's finding that plaintiff failed to prove that either or both

---

shown by appropriate medically acceptable imaging and measured on physical examination at 45° or more of flexion from the vertical position (zero degrees); or 2. Ankylosis (fixation) of the dorsolumbar or cervical spine as shown by appropriate medically acceptable imaging and measured on physical examination at 30° or more of flexion (but less than 45°) measured from the vertical position (zero degrees), and involvement of two or more organs/body systems with one of the organs/body systems involved to at least a moderate level of severity. Or **D.** Repeated manifestations of inflammatory arthritis, with at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss) and one of the following at the marked level: 1. Limitation of activities of daily living. 2. Limitation in maintaining social functioning. 3. Limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace." *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 14.09.

impairments meet or medically equal any listing is supported by substantial evidence. *See Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (it is the claimant's burden to demonstrate that he or she meets or medically equals a listing).

Plaintiff's final challenges are to the Law Judge's determination of her residual functional capacity and his questioning of the VE based on that RFC. (Dkt. No. 20, at 11-15.) At the core of this argument, is plaintiff's contention that the Law Judge erred by assigning little weight to the opinion of plaintiff's treating physician, Maureen Aaron, M.D. (Dkt. No. 20, at 9-15.) In her June 2011 report of plaintiff's "Physical Capacities," Dr. Aaron indicated that plaintiff could stand/walk for two hours at a time, sit in a work posture for two hours at a time, stand/walk for two hours total of an eight-hour workday, sit in a work posture for two hours total of an eight-hour workday, frequently lift/carry a maximum of five pounds, occasionally lift/carry a maximum of ten pounds, could perform no simple grasping, pushing/pulling, fine manipulation, or repetitive motion; suffers frequent interruptions in concentration, as a result of her pain, that prevent her from focusing on the task at hand; would miss days at work as a result of exacerbations in her pain; would require opportunities to lie down to rest or be inactive for certain periods during an eight-hour workday; and had limitations due to stress. (R. 549.)

The opinions of treating physicians are entitled to controlling weight so long as they are consistent with the other substantial evidence of record and are well supported by medically acceptable clinical and diagnostic techniques. *See* 20 C.F.R. § 404.1527(c)(2). Otherwise, the Commissioner may assign such significantly less weight so long as he or she sufficiently supports and articulates their findings. *See Craig. v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996). Several other factors also play a role in determining the weight to assign medical opinions of record, including the length, nature, extent, and frequency, etc., of the treatment relationship.

*See* 20 C.F.R. § 404.1527(c). Here, the Law Judge considered Dr. Aaron's opinion, but he decided it was not entitled to controlling weight. He found that Dr. Aaron's opinion was not supported by the objective evidence of record, and that it conflicted with other portions of her treatment records. (R. 27.) Furthermore, he concluded that Dr. Aaron's opinion was based on plaintiff's subjective reports of her pain and limitations, which the Law Judge found exaggerated and not entirely credible. *Id.* However, the Law Judge noted that Dr. Aaron's opinion was consistent with a limited range of sedentary work consistent with his determination of plaintiff's RFC except to the extent he found some of Dr. Aaron's limitations to be excessive.[10] *Id.*

The undersigned agrees that portions of Dr. Aaron's opinion are not entirely supported by the treatment record. The opinion is exceptionally brief, citing no medical records and going into little detail about the degree of plaintiff's additional limitations. There is also no objective evidence that plaintiff is incapable of using her hands to manipulate objects,[11] and while plaintiff suffers pain, there is no objective evidence suggesting that it interferes with her ability to sit or concentrate to the degree found by Dr. Aaron.[12] In point of fact, the Law Judge assigned little weight to Dr. Aaron's opinion in large part because he believed it was based on plaintiff's subjective complaints, which he found were not entirely credible, rather than the objective evidence of record. (R. 26-27.) It is on this point, and on the Law Judge's examination of the VE, that the undersigned has concerns.

---

[10] The Law Judge also assigned little weight to the opinions of the State agency medical consultants, finding that while their opinions that plaintiff could perform a range of light work were based on the information in the record at the time, additional medical evidence received in the course of developing plaintiff's case indicated that plaintiff's impairments are more limiting than the consultants opined. (R. 27-28.)

[11] Again, though plaintiff has degenerative arthritis in her hands and wrists along with additional shoulder limitations, the medical evidence of record does not indicate that she is significantly limited by them. (R. 477-478, 487-488. 542.)

[12] Dr. Heil noted that plaintiff's attention/concentration was described as diminished but personally noted that it was intact to gross observation. (R. 546.) Other records similarly conclude that plaintiff was generally alert and oriented during physical examination.

14

First of all, while a plaintiff must prove by objective evidence that she suffers a condition that could cause their pain, fatigue, or other symptoms, objective evidence is not required to prove intensity, persistence, and limiting effects of these symptoms. See *Craig v. Chater*, 76 F.3d 585, 591-593 (4th Cir. 1996). Objective evidence is a very important element of a credibility determination, and a plaintiff's allegations concerning her pain may not be discredited solely because they are not supported by objective medical evidence. *Id.*; SSR 96-7p, 1996 WL 374186 (July 2, 1996).

Here, the objective evidence is limited, but it does show that plaintiff suffers a variety of impairments which reasonably could cause her pain, fatigue, problems with concentration, etc. While the Law Judge extensively examined the record and found that it did not support plaintiff's allegations, he failed to cite or refer to any specific medical records in support of that conclusion in his credibility determination, though he generally refers to inconsistencies between plaintiff's allegations and the evidence in the objective treatment record. (R. 26.); *see Hatcher v. Sec'y Dep't of Health & Human Servs.*, 898 F.2d 21, 23-24 (4th Cir. 1989) (the Law Judge must clearly state the reasons for his decision and what evidence he relied upon if the court is to determine whether his findings are supported by substantial evidence). More importantly, several of the Law Judge's reasons for discounting her subjective complaints do not rise to the level of substantial evidence. He found that plaintiff was not "totally debilitated" because, "she shops, performs at least some household chores, visits, and drives, and probably cares for her grandchildren....admitted being able to prepare some meals, and probably does at least a limited range of household tasks." (R. 26.) A claimant need not be totally bedridden to be found

disabled,[13] and plaintiff's testimony that family members help her with each of these tasks which had become much more difficult over the relevant period is not challenged in any way.

Furthermore, the Law Judge's findings are also rife with assumptions that amount to little more that surmise or conjecture. The Law Judge determined that plaintiff "*probably* cares for her grandchildren," despite there being no evidence to support that finding, and plaintiff's specifically testifying that she can no longer play with them. (R. 38-55, 199-206, 262-269.) (emphasis added). He found that plaintiff "*probably* does at least a limited range of household tasks," despite testimony that any chores had become increasingly difficult to perform, and that her family helped her essentially with all of them. (R. 38-55, 199-206, 262-269.) (emphasis added). He determined, "Since she has recently lost her mother, and is experiencing other psychosocial stressors, she is *obviously* undergoing a grief reaction that may exacerbate her pain." (R. 26.) (emphasis added) While Dr. Heil noted that plaintiff had several psychosocial stressors (R. 545-547), the Law Judge does not possess the expertise to make a medical finding of the cause and duration of plaintiff's pain. As said before, the Law Judge's reliance on Dr. Heil's report is especially odd given how he ignored Dr. Heil's conclusion that plaintiff's GAF score is 45. (R. 545.) Though the Law Judge is the ultimate fact finder and may interpret the evidence and resolve inconsistencies in the record, his findings must be supported by substantial evidence, and, given these errors, the undersigned concludes that his credibility determination is not so supported.

The Law Judge's determination of plaintiff's RFC and his questions to the VE also are suspect based on the evidence in this record. While he framed both by relying on the opinions of the State agency examiners (R. 27-28, 56-59), the Law Judge notably omitted several of their findings from his determination of plaintiff's RFC and the hypotheticals posed to the VE. Both

---

[13] *See Trotten v. Califano*, 624 F.2d 10, 11–12 (4th Cir. 1980).

16

of the relevant State agency examiners opined that plaintiff was greatly limited in postural activities, determined that she could never climb ladders, ropes, or scaffolds or crawl, and could only occasionally climb ramps/stairs, balance, stoop, kneel, or crouch. (R. 214, 277.) Both also opined that plaintiff was limited in her use of her upper and lower extremities and could only occasionally push/pull or use foot controls. *Id.* In addition, a July 2010 opinion revealed that plaintiff suffered several environmental limitations, including the need to avoid concentrated exposure to extreme cold or heat, wetness, vibration, and hazards. (R. 278.) Without explanation, none of these additional limitations made it into the Law Judge's RFC determination or his hypothetical questions to the VE. While some of this oversight might be considered harmless at Step 2, it cannot be considered harmless at this level of the evaluation.

While the Law Judge's assessment of the severity of plaintiff's knee impairment, his credibility determination, and his RFC determination and resulting questions to the VE when considered separately might not require a remand, in combination, they render the Law Judge's decision both erroneous and unsupported by substantial evidence. Accordingly, the undersigned finds that the Commissioner's final decision is not supported by substantial evidence, and that the case should be remanded to conduct a proper analysis of the evidence in light hereof.

For all these reasons, it is RECOMMENDED that an Order enter GRANTING plaintiff's motion for summary judgment, in part, DENYING the Commissioner's motion for summary judgment, and REMANDING this case to the Commissioner for further proceedings.

The Clerk is directed to immediately transmit the record in this case to the presiding United States District Judge. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note objections, if any they may have, to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by the

undersigned not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objection. The Clerk is directed to transmit a certified copy of this Report and Recommendation to all counsel of record.

ENTERED: _____
U.S. Magistrate Judge

9-24-2013
Date